Case 23-02092-GLT    Doc 177    Filed 04/01/25    Entered 04/01/25 09:32:12    Desc Main
Document    Page 1 of 13

FILED
4/1/25 9:25 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 23-21472-GLT |
| | Chapter 11 |
| **HELENE SEMANDERES**, | |
| *Debtor.* | |
| | |
| **HELENE SEMANDERES**, | Adv. Pro. No. 23-2092-GLT |
| *Plaintiff,* | Related to Dkt. Nos. 71, 84, 88, 89, 94, 98, 99, 100, 104, 106, 113, 128, 131, 135, 136, and 144 |
| v. | |
| **PNC BANK, N.A., PA FINANCE 2, LLC, HERCULES PAINTING CO. INC., MARIA SAVAKIS, GEORGE SAVAKIS, and STAVROS SEMANDERES**, | |
| *Defendants.* | |

| | |
|---|---|
| David Z. Valencik, Esq.<br>Calaiaro Valencik<br>Pittsburgh, PA<br>*Attorney for Plaintiff Helene Semanderes* | Dennis J. Spyra, Esq.<br>Spyra Law Office<br>White Oak, PA<br>*Attorney for Defendant Stavros Semanderes* |
| Robert E. Dauer, Jr., Esq.<br>Gary M. Sanderson, Esq.<br>Meyer, Unkovic & Scott LLP<br>Pittsburgh, PA<br>*Attorneys for Defendant PA Finance 2, LLC* | Michael A. Shiner, Esq.<br>Joanna D. Studeny, Esq.<br>Tucker Arensberg PC<br>Pittsburgh, PA<br>*Attorneys for Defendants Hercules Painting Co., Inc., Maria Savakis, & George Savakis* |

## MEMORANDUM OPINION

Debtor Helene Semanderes commenced this adversary proceeding to determine the extent of the secured claims under sections 506(a) and 1125(b)(5) of the Bankruptcy Code[1]

---

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure. All references to "Civil Rule" shall be the Federal Rules of Civil Procedure.

against four properties.[2]  The only remaining dispute pertains to the priority of liens encumbering commercial property located at 2435 West Pike Street in Washington, Pennsylvania (the "West Pike Property").[3]  Maria and George Savakis, and their business Hercules Painting Company, Inc. (collectively, the "Savakis Parties"), assert that a purported senior lienholder, PA Finance 2, LLC, has no debt underlying its mortgage following a sheriff's sale of another property.  As such, they seek judgment on the pleadings as to the priority of liens on the West Pike Property.[4]  PA Finance 2 opposes, contending that material issues of fact remain in dispute.[5]  For the reasons set forth below, the Court concludes that PA Finance 2's prior execution substantially reduced its debt, but did not wipe it out entirely.

I.   BACKGROUND

The facts of this case are far less muddled than the twice amended complaint, counterclaims, and cross-claims would suggest.  The Court has authentic copies of the recorded instruments, loan documents, and court records to which the allegations pertain.[6]  As a result, the facts are what they are, and the Court need not rely on inferences.

---

[2]   See *Complaint to Determine Secured Status*, Dkt. No. 1; see also *Amended Complaint to Determine Secured Status*, Dkt. No. 5, and *Second Amended Complaint to Determine Secured Status*, Dkt. No. 106.

[3]   See *Status Report Regarding Stipulations as to Priority of Liens Encumbering West Pike Commercial Property*, Dkt. No. 83; *Order and Stipulation Regarding Priority of Liens Encumbering 1650 Washington Road*, Dkt. No. 85; *Order and Stipulation Regarding Priority of Liens Encumbering 34 Kirkwood Drive*, Dkt. No. 86; *Order and Stipulation Regarding Priority of Liens Encumbering Vacant Lot*, Dkt. No. 87.

[4]   *Motion for Judgment on the Pleadings*, Dkt. No. 71; see also *Reply to PA Finance 2, LLC's Response to Motion for Judgment on the Pleadings*, Dkt. No. 99.

[5]   See *Defendant PA Finance 2, LLC's Response and Brief in Opposition to Motion for Judgment on the Pleadings filed on Behalf of Maria and George Savakis*, Dkt. No. 84; *Defendant PA Finance 2, LLC's Supplemental Brief in Opposition to Motion for Judgment on the Pleadings*, Dkt. No. 98; see also *Plaintiff's Response and Joinder to the Response and Brief of PA Finance 2, LLC*, Dkt. No. 88; *Amended Response to Motion for Judgment on the Pleadings filed on Behalf of Stavros Semanderes*, Dkt. No. 94; *Defendant Stavros Semanderes' Supplemental Brief in Opposition to Motion for Judgment on the Pleadings*, Dkt. No. 100.

[6]   See Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) ("Thus, in deciding a motion for judgment on the pleadings, a court may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the

The Debtor is married to the non-debtor defendant Stavros Semanderes (together, the "Semandereses").[7] They are the principals of Odyssey Contracting Corporation ("Odyssey") and Houston Industrial Corporation ("Houston"). Over the years, the Semandereses have entered into various loan agreements with PNC Bank, both as individuals and on behalf of their businesses.[8] These transactions form the basis for PA Finance 2's interest in the West Pike Property.[9] Also worth noting, PA Finance 2 is an entity owned and controlled by the Semandereses' son Nicholas Semanderes.[10]

In 2000, the Semendereses granted open-ended mortgages to PNC Bank with respect to the West Pike Property and another located on Route 19 in South Strabane (the "Route 19 Property").[11] By agreement, the mortgages were later cross-collateralized against all the Debtor's properties and cross-defaulted.[12] As a result, every obligation owed to PNC Bank was secured by each mortgage with respect to all of the Debtor's properties.

In 2004, the Semandereses executed a commercial guaranty agreeing to be personally liable for all debts—present and future—that Odyssey owed to PNC Bank ("Guaranty").[13] In the event of a default, the Guaranty allowed for the confession of judgment, "or a series of judgments," against the Semandereses and in favor of PNC Bank for all amounts

---

[  ]    complainant's claims are based upon these documents.'") (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

[7]    *Second Amended Complaint to Determine Secured Status*, Dkt. No. 106 at ¶ 9.

[8]    *Second Amended Complaint to Determine Secured Status*, Dkt. No. 106 at ¶¶ 16-19.

[9]    Id. at ¶¶ 20-22.

[10]   See *Defendants Hercules Painting Company, Inc., Maria Savakis, and George Savakis' Answer, Counterclaim, and Crossclaim*, Dkt. No. 19 at p. 24, ¶ 32; *Crossclaim Defendant PA Finance 2, LLC's Answer and Affirmative Defenses to Hercules/Savakis Counterclaims and Cross Claims*, Dkt No. 29 at ¶ 32.

[11]   *Second Amended Complaint to Determine Secured Status*, Dkt. No. 106 at ¶¶ 16-17; see also Exhibit 9, Dkt. No. 19-10; Exhibit 10, Dkt. No. 19-11.

[12]   *Second Amended Complaint to Determine Secured Status*, Dkt. No. 106 at ¶ 19.

[13]   Id. at ¶ 18; see *Exhibit 7*, Dkt. No. 19-8.

due.[14]  The Guaranty further provided that "[n]o single exercise of the foregoing power to confess judgment, or a series of judgments, shall be deemed to exhaust the power . . . ."[15]

There were two obligations owed to PNC Bank secured by the mortgages on the West Pike and Route 19 Properties relevant to this proceeding.  The first was a line of credit for Odyssey executed by the Semandereses in their capacity as corporate officers (the "Odyssey Note").[16]  The line of credit available under the Odyssey Note was eventually increased to $4,000,000.[17]  The second was a term note executed by the Semandereses in their individual capacity (the "Term Note").[18]  Through amendments, the principal amount of the Term Note increased to $248,349.57.[19]  Critically, though both notes were secured by the mortgages, only the Odyssey Note fell within the Guaranty since the Term Note was not Odyssey's debt.

In 2014, the Savakis Parties loaned $780,000 to the Semandereses evidenced by a promissory note (the "Savakis Note").[20]  To secure the Savakis Note, the Semandereses granted the Savakis Parties a mortgage on several parcels, including the West Pike and Route 19 Properties (the "Savakis Mortgage").[21]

A year later, PNC Bank confessed judgment against the Semandereses under the Guaranty in the amount of $4,298,827.27 (the "Confessed Judgment").[22]  Although details are sparse, it appears the Semandereses and PNC Bank entered into a forbearance agreement

---

[14]    *Exhibit 7*, Dkt. No. 19-8 at 4.

[15]    Id.

[16]    See *Exhibit 6*, Dkt. No. 19-7.

[17]    *Second Amended Complaint to Determine Secured Status*, Dkt. No. 106 at ¶ 18.

[18]    Id.

[19]    Id.

[20]    *Exhibit 1*, Dkt. No. 19-2.

[21]    *Exhibit 2*, Dkt. No. 19-3.

[22]    *Exhibit 12*, Dkt. No. 19-13.

following the Confessed Judgment.[23]   Then, in 2018, PNC Bank filed a mortgage foreclosure action against the Route 19 Property asserting an accelerated balance of $4,377,898.83.[24]  The foreclosure complaint specifically referenced the Odyssey Note, the Term Note, and the Guaranty.[25]  Ultimately, PNC Bank did not bring the foreclosure action to judgment and no execution or sale resulted from it.[26]

In January 2020, the Savakis Parties obtained judgment against the Semanderes parties in the amount of $1,082,704.65.[27]  This amount has increased to $1,467,304.65 as of the petition date.[28]

A month later, PNC Bank assigned the Guaranty, the Odyssey Note, the Term Note, both mortgages, and the Confessed Judgment (collectively, the "PNC Interests") to PA Finance I, LLC, a third-party entity unrelated to PA Finance 2.[29]  Thereafter, PA Finance I filed a *Praecipe for Writ of Execution on the PNC Confession of Judgment*, resulting in a *Writ of Execution* directing a sheriff's sale of the Route 19 Property.[30]  The Savakis Parties note that praecipe specifically references "[a]mounts owed in connection with a Four Million ($4 million)

---

[23] See *Exhibit 11*, Dkt. No. 19-12 at p. 50-69 (mortgage modifications referencing a 2017 forbearance agreement).

[24] *Exhibit 13*, Dkt. No. 19-14.

[25] Id. at 3-5.

[26] *Cross Claim Defendant PA Finance 2, LLC's Answer and Affirmative Defenses to Hercules/Savakis Counterclaims and Cross Claims*, Dkt. No. 29 at ¶¶ 64-67.

[27] *Defendants Hercules Painting Company, Inc., Maria Savakis, and George Savakis' Answer, Counterclaim, and Crossclaim*, Dkt. No. 19 at p. 6, ¶ 28.

[28] Id.

[29] *Second Amended Complaint to Determine Secured Status*, Dkt. No. 106 at ¶ 20.

[30] See *Cross Claim Defendant PA Finance 2, LLC's Answer and Affirmative Defenses to Hercules/Savakis Counterclaims and Cross Claims*, Dkt. No. 29 at ¶ 73.

Line of Credit"—the Odyssey Note—"as related to and under a Mortgage" on the Route 19 Property.[31]

Days prior to the sheriff's sale, PA Finance I, the Semandereses, Odyssey, and Houston entered into a settlement agreement (the "Settlement"). As part of the Settlement, the Semanderes parties acknowledged that the amounts then due and owing was $5,210,288.32 under the Confessed Judgment and $350,908.59 under the Term Note.[32] They also agreed to a deficiency of $2,500,000 in connection with the Confessed Judgment following the sheriff's sale of the Route 19 Property conditioned on compliance with the Deficiency Judgment Act.[33] The Settlement also contemplated an assignment of the PNC Interests to a "designated entity,"[34] which turned out to be PA Finance *II*, LLC (not to be confused with PA Finance 2).[35] PA Finance II, LLC purchased the Route 19 Property at the sheriff's sale[36] and then further assigned the PNC Interests to PA Finance 2 a few months later.[37]

Although the Settlement contemplated a deficiency in connection with the Confessed Judgment, no petition to fix fair market value under the Deficiency Judgment Act was ever filed.[38] Consequently, the Savakis Parties filed a *Petition to Compel Satisfaction of Liens* in the Court of Common Pleas of Washington County, Pennsylvania as a supplemental proceeding

---

[31] *Exhibit J*, Dkt. No. 104 at ¶ 4.

[32] *Exhibit 14*, Dkt. No. 19-15 at ¶¶ 3-4.

[33] Id. at ¶ 9 (citing 42 Pa. C.S.A. § 8103).

[34] Id. at ¶ 7.

[35] *Second Amended Complaint to Determine Secured Status*, Dkt. No. 106 at ¶ 21.

[36] *Defendants Hercules Painting Company, Inc., Maria Savakis, and George Savakis' Answer, Counterclaim, and Crossclaim*, Dkt. No. 19 at p. 24, ¶¶ 30-31.

[37] *Second Amended Complaint to Determine Secured Status*, Dkt. No. 106 at ¶ 22. The Savakis Parties argue that PA Finance 2 has not provided evidence of such an assignment, but that is not their burden at the pleading stage. For present purposes, the Court must except the allegation that PA Finance 2 is the assignee of PA Finance II.

[38] See 42 Pa. C.S.A. § 8103(a).

to the Confessed Judgment.[39]  PA Finance II opposed and, remarkably, so did the Semandereses.[40]  The Court of Common Pleas granted the petition in 2022, finding that failure to timely comply with the statute "raises as a matter of law the conclusive presumption that the judgment has been satisfied."[41]  It specifically rejected the notion that the Settlement itself satisfied the statute, or that the deficiency could be enforced as a component of the Settlement.[42]  Thus, the Court of Common Pleas entered an Order stating that "[t]he Judgment rendered against Stavros Semanderes and Helene Semanderes at Docket Number 2015-2193 is hereby SATISFIED."[43]

The Debtor filed a voluntary chapter 11 petition in July 2023, and this adversary proceeding the followed.  The Debtor alleged that the West Pike Property is worth approximately $1,300,000[44] and that the approximate balance owed to PA Finance 2 is $2,000,000.[45]  Beyond PA Finance 2 and the Savakis Parties, the Debtor alleged two additional encumbrances on the West Pike Property: (1) an $80,545.32 tax lien held by the Washington County Tax Bureau;[46] and (2) a mortgage held FirstMerit Bank, N.A. that was recorded after PNC Bank but before the Savakis Parties in the original amount of $100,000.[47]  FirstMerit Bank did not file an answer and

---

[39] *Defendants Hercules Painting Company, Inc., Maria Savakis, and George Savakis' Answer, Counterclaim, and Crossclaim*, Dkt. No. 19 at p. 24, ¶ 34.

[40] See *Exhibit 17*, Dkt. No. 19-18 at 3.  This point bears emphasis—*the Semandereses fought to preserve a $2,500,000 obligation against them and their businesses.*

[41] Id. at 10.

[42] Id. at 11-12.

[43] Id. at 13.

[44] *Second Amended Complaint to Determine Secured Status*, Dkt. No. 106 at ¶ 53.

[45] Id. at ¶ 56.

[46] Id. at ¶ 55.

[47] Id. at ¶ 57.

7

was defaulted, but that only means that they will be bound by the "lien priorities and property valuations to be determined in this Adversary Proceeding."[48]

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

## III. POSITIONS OF THE PARTIES

### A. The Savakis Parties

The Savakis parties argue that the Savakis Mortgage is fully secured because the satisfaction of the Confessed Judgment necessarily extinguished the Guaranty, Odyssey Note, Term Note, and mortgages. Basically, PA Finance 2 lacks any interest in the West Pike Property. Working backwards, they emphasize that the failure to timely comply with the Deficiency Judgment Act created an irrebuttable presumption that PA Finance II was paid in full from the execution.[49] From there, the Savakis Parties note that the Confessed Judgment is based on the Guaranty, which they contend secured *both* the Odyssey Note and Term Note.[50] Therefore, under the doctrine of merger, they assert that the underlying obligations merged into the Confessed Judgment and no longer survived separately.[51]

Additionally, the Savakis Parties deny that the sheriff's sale was a mere execution since PA Finance II could not have purchased the Route 19 Property free of the senior Savakis

---

[48] *Order of Court*, Dkt. No. 165.

[49] *Brief in Support of Motion for Judgment on the Pleadings*, Dkt. No. 71-1 at 13.

[50] Id. at 11; *Reply to PA Finance 2, LLC's Response to Motion for Judgment on the Pleadings*, Dkt. No. 99 at 5-6.

[51] *Reply to PA Finance 2, LLC's Response to Motion for Judgment on the Pleadings*, Dkt. No. 99 at 11-12.

8

Mortgage. They reason that the only way PA Finance II could overcome that hurdle when executing on the Confessed Judgment was for it to legally relate back to the PNC mortgage.[52] In fact, the Savakis Parties assert that PA Finance II acknowledged that by expressly referencing the PNC mortgage when requesting the writ of execution.[53]

    B.    <u>PA Finance 2 (and the Semandereses[54])</u>

PA Finance 2 argues that the Savakis Parties omit or ignore critical facts resulting in a misapplication of the Deficiency Judgment Act.[55] According to PA Finance 2, the central flaw in their reasoning is that the

> Confessed Judgment was *solely entered under the Guaranty* against the Semanderes for certain amounts then due and owing under the Guaranty on the date that the judgment was entered by confession.[56]

In other words, no judgment entered with respect to the Odyssey Note, Term Note, or either mortgage.[57] And although the Confessed Judgment has been deemed satisfied, PA Finance 2 asserts that "[t]he Order did not mention or in any way address the satisfaction" of the PNC Interests.[58] As such, PA Finance 2 insists that it "did not constitute payment in full of amounts due and owing under the PNC Mortgages, the Odyssey Note, the Term Note *or even the*

---

[52]    <u>Id.</u> at 7-10.

[53]    <u>Id.</u>

[54]    The Semandereses filed one-page joinders to PA Finance 2's opposition to the motion for judgment on the pleadings. <u>See</u> *Plaintiff's Response and Joinder to the Response and Brief of PA Finance 2, LLC*, Dkt. No. 88; *Amended Response to Motion for Judgment on the Pleadings filed on Behalf of Stavros Semanderes*, Dkt. No. 94; *Defendant Stavros Semanderes' Supplemental Brief in Opposition to Motion for Judgment on the Pleadings*, Dkt. No. 100.

[55]    *Defendant PA Finance 2, LLC's Response and Brief in Opposition to Motion for Judgment on the Pleadings filed on Behalf of Maria and George Savakis*, Dkt. No. 84 at 2.

[56]    <u>Id.</u> at 5 (emphasis added).

[57]    <u>Id.</u> at 5, 8.

[58]    <u>Id.</u> at 9.

9

*Guaranty.*"[59] In further support, PA Finance points to the post-judgment modifications to the mortgages and the terms of the Guaranty providing that it is not exhausted by a single exercise of the warrant.[60]

IV. **DISCUSSION**

   A. <u>Applicable Standard</u>

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[61] Motions under Civil Rule 12(c) are analyzed similarly to those filed under Civil Rule 12(b)(6).[62] In other words, "the court must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party,' and may not grant the motion 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'"[63] When assessing the motion, the court is not necessarily limited to the pleadings, and may consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."[64] Here, neither PA Finance 2 nor the Semandereses disputed the authenticity of the exhibits attached to the cross-claim or objected to their consideration so the Court is free to consider them.

---

[59]   <u>Id.</u> (emphasis added).

[60]   *Defendant PA Finance 2, LLC's Supplemental Brief in Opposition to Motion for Judgment on the Pleadings*, Dkt. No. 98 at 14-17.

[61]   Fed. R. Civ. P. 12(c), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b).

[62]   <u>Wolfington v. Reconstructive Orthopaedic Assocs. II PC</u>, 935 F.3d at 195.

[63]   <u>Id.</u> (quoting <u>In re Asbestos Prods. Liab. Litig. (No. VI)</u>, 822 F.3d 125, 133 n.6 (3d Cir. 2016)).

[64]   <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010).

10

B.  Analysis

It is undisputed, and in fact indisputable under the *Rooker-Feldman* doctrine,[65] that the Confessed Judgment was satisfied as a matter of law. The present dispute boils down to one question: *what does that mean practically?* The parties agree that judgment was confessed on the Guaranty but draw wildly different conclusions from that premise. Ironically, neither gets it right because they misinterpret the Guaranty and focus on red herrings.

The Savakis Parties group all the PNC Interests together—the Confessed Judgment, the Odyssey Note, the Term Note, and the mortgages—and conclude all were satisfied by operation of the Deficiency Judgment Act. In doing so, however, they overlook something basic: the Guaranty only applies to Odyssey's obligations. In contrast, the Term Note is a personal obligation of the Semandereses. Consequently, the Term Note could not have been enforced or satisfied by the Confessed Judgment. No one alleged that a separate judgement entered against the Semandereses on the Term Note, so it seemingly remains an outstanding obligation to PA Finance 2. And since the Term Note was not satisfied, the open-ended mortgage on the West Pike Property must still secure it. Therefore, the Court cannot find that PA Finance 2 lacks a valid lien senior to the Savakis Mortgage.

That said, PA Finance 2's continued defense of the Odyssey Note is similarly flawed. In fact, the argument that the Confessed Judgement solely related to the Guaranty

---

[65]  The *Rooker-Feldman* doctrine bars an inferior federal court from "from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" Lance v. Dennis, 546 U.S. 459, 460, 126 S. Ct. 1198, 1199, 163 L. Ed. 2d 1059 (2006) (quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)). The doctrine takes its name from the only two cases in which the Supreme Court has applied it to defeat federal subject-matter jurisdiction: Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).

11

borders on irrational. To state the obvious: the Guaranty itself does not evidence a quantifiable monetary debt. To the contrary, guarantees are secondary obligations that exist to enforce a separate obligation against someone other than the primary obligor. That is precisely what happened when PNC confessed judgment against the Semandereses on the amount owed by Odyssey under the Odyssey Note. Therefore, it is undeniable that the Confessed Judgment represented an act to collect amounts due under the Odyssey Note.

The Savakis Parties carry the point a step further and argue that the Odyssey Note merged with the Confessed Judgment upon entry. The doctrine of merger of obligations provides that "[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it."[66] Considering that judgment was entered against the Semandereses as guarantors of the Odyssey Note, the merger could only extinguish their contractual obligations and not Odyssey's. Indeed, Odyssey's liability could only be discharged by the satisfaction of the Odyssey Note. Yet therein lies the rub: PA Finance II (or 2) cannot recover more than what was contractually due.

Frankly, it does not appear that PA Finance 2 assigns any practical significance to the satisfaction of the Confessed Judgment. This is evident from the assertion that the Confessed Judgment only pertained to the Guaranty (not any note) which cannot be exhausted by a single exercise of the warrant. To bolster the claim, PA Finance 2 vaguely asserts that amounts continued to accrue on the Odyssey Note post-Confessed Judgment. Conceptually, that certainly tracks with the Settlement establishing the amount due and owing under the $4,298,827.27 Confessed Judgement as $5,210,288.32 mere days before the sheriff's sale.[67] But at minimum,

---

[66] Stendardo v. Fed. Nat'l Mortgage Assoc. (In re Stendardo), 991 F.2d 1089, 1099 (3d Cir. 1993) (quoting Restatement (Second) of Judgments § 18 cmt. a (1982)) (internal quotation marks omitted).

[67] See *Exhibit 14*, Dkt. No. 19-15 at ¶ 3.

the deemed satisfaction of the Confessed Judgment should have resulted in debt reduction of over $5.2 million under the Odyssey Note—the only guaranteed obligation. After all, in the absence of a deficiency, the Route 19 Property is presumed to have changed hands for the amount of the judgment.[68]

Given the procedural posture, the Court cannot find that the Odyssey Note was fully satisfied by the Confessed Judgment as the Savakis Parties contend. Nevertheless, PA Finance 2 eventually will need to affirmatively show how any amount could still be due and owing under the Odyssey Note after the Settlement and sheriff's sale.

## V. CONCLUSION

In light of the foregoing, the motion for judgment on the pleadings must be denied. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: March 31, 2025

GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[68] See 42 Pa. C.S.A. § 8103(d).